## IN THE UNITED STATE BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

IN THE MATTER:

JOSE O GOMEZ APONTE

**DEBTOR (S)**

FIRSTBANK Puerto Rico
**MOVANT**

JOSE O GOMEZ APONTE
Alejandro Oliveras Rivera
Trustee - Chapter 13
**RESPONDENT'S**

CASE NO.: 18-01896 (**ESL**)

CHAPTER 13

(x) Opposition to plan
confirmation under Title 11
§1325(a) (5) & 361 on Plan
Confirmation, Adequate
Protection and Equal Monthly
Payments

## MOTION OBJECTING THE CONFIRMATION OF THE PLAN

**TO THE HONORABLE COURT:**

COMES NOW, Movant **FIRSTBANK Puerto Rico**, through its undersigned attorney and very respectfully states and preys:

**I. INTRODUCTION.**

1- The jurisdiction of the Honorable Court is ascertained under Title 28 USC§1334, Title 28 USC §157, Title 11 USC §361 and 11 USC §1325(a) (5) (B) (iii), on *Adequate Protection* and Title 11 USC §1325(a) (5) (B) (iii) on *Confirmation of Plan,* Title 11 USC §1326(a)(1) on *Pre-Confirmation Adequate Protection,* 2005 BAPCPA General Order No. 05-08 on *Pre-Confirmation Adequate Protection* 11 USC §1325(b)(6) on *Feasibility Test or sufficiency funding of a proposed plan.* See Lundin, Keith M.; on Chapter 13 Bankruptcy: Chapter 5, at §5.56 on *Feasibility*.

## II. FACTS.

2- Movant standing is ascertained as it filed on April 23, 2018, a secure Lien claim holder on a personal security agreement with the outstanding debt of $7,423.02, under account no. 1664. See, Clm. Reg. 1.

3- Amended plan dated June 7, 2018provides for the payment to Movants secure lien claim "through the plan". This automatically triggers the application of §§1325 (a) (5) (iii) (I) and (II) and §1326(a) (1) and §1326(b). The proposed plan provides for a pre-adequate protection of §§75 dollars. Yet, post- petition will start in one year and one month (1 yr. & 1 mth.). Furthermore, the plan as proposed is insufficiently funded for $492.96 dollars. See, Bkcy Dck 11 and Attachment A and B.

## III. LEGAL BASIS.

Bankruptcy L Rule 9013-2 (a) specifically provides that except as provided in subsection (b) of this LBR, any motion or response thereto must be accompanied by supporting memorandum that contains the points and authorities in support of the party's position, together with any affidavits or documents in support thereof.

4- Section 1325 sets forth the requirements for confirmation of a chapter 13 plan. Section 1325 (a) provides that the court shall confirm a plan if:

(5) With respect to each allowed secured claim *provided for by the plan* –
      (A) The holder of such claim has accepted the plan;
      (B) (i) the plan provides that –

           (I) The holder of such claim retain the lien securing such claim until the earlier of – .
           (aa) the payment of the underlying debt determined under nonbankrutpcy law; or
           (bb) the discharge under 1328: and
           (II) *If* the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to

the extend recognized by the applicable nonbankrutpcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and -

(iii) *If-*

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments **shall be in equal monthly payments**; and
(II) The **holder of the claim is secured by a personal property**, the amount of **such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan**.

(C) the debtor surrenders the property securing such claim to such holder.

5- Likewise, Section 1326(a) (1), as amended, provides that unless the Court order otherwise, the debtor(s) *shall* commence making payments not later than 30 days after the date of the filing of the plan or the order of relief, whichever is earlier, in the amount -

(A) Proposed by the plan to the trustee;

(B) ….

(C) That provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extend the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, deducting the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.

6- Section 1326(a) (2) provides that - A payment made under paragraph (1) (A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed,

the trustee shall distribute any such payment in accordance with
the plan as soon as practicable…

      (b) Before or at the time of each payment to creditors
under the plan, there shall be paid –

         (1) Any unpaid claim of the kind specified in
section 507 (a)(2) of this title;

         (2) If a standing trustee appointed under section
586 (b) of title 28 is serving in the case,
the percentage fixed for such standing trustee
under section 586 (e)(1)(B) of title 28;…

7- Since October 17, 2006 the Bankruptcy Act became amended
by the Bankruptcy Abuse Prevention and Consumer Protection Act of
2005, [best known as BAPCPA 2005]. And, back in 1992, the Supreme
Court of the United States ruled in Connecticut Nat'l Bank vs.
Germain, 503 US 249 (1992) in interpreting a statute, "courts
must presume that a legislature says in a statute what it means
and means in a statute what it says". Notice should be taken at
this time pertain in reference to the language used by Congress.
The verb is in the form of an "imperative verb"; it is not a
conditional one. And, it is that *the debtor shall*… not that the
debtor *may*.

8- The concept of adequate protection is derived from the
Fifth Amendment protection of property interest an enunciated by
the Supreme Court. <u>Wright vs. Union Central Life, Ins.</u>, 31 US 274
(1940); <u>Louisville Joint Stock Land Bank vs. Radford</u>, 295 US 555
(1935)

9- Although, the Code does not define adequate protection,
it does provide a non-exclusive list of samples under §361. The
Courts had recognized various methods to provide adequate
protection: (1) *the first method* is to provide periodic cash
payments by the estate, to the extent of a decrease in value of
the opposing entity's interest in the property involved. <u>In re</u>
<u>Yale Express, Inc.</u> 384 F2d. 990 (2d Cir. 1967), (2) *the second*

*method* is the provision of an additional or replacement lien on the property to the extent of the decrease in value of the property involved, (3) *the third method is the granting of an administrative expense priority to the protected entity to the extent of the loss*, (4) *the forth method* gives the parties and the courts flexibility by allowing such other relief as will result in the realization by the protected entity in the value of its interest in the property involved. H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st. Sess. (1977) pp. 338-340

10- To address the "new" provisions under the Code an article was published at The American Bankruptcy Journal. This article specifically address the fact that prior to the amendment of the Code under BAPCPA 2005 *in many instances creditors with a security interest have been required to await payment on their secured claims until after payment of administrative expenses which include unpaid attorney fees.* Further, Chapter 13 plans often provided for payment of the current mortgage, payment of mortgage arrearages, and payment of to a lease and lease arrearages prior to payments on secured claims. This often resulted in uncompounded depreciation of collateral during the pendency of a chapter 13 case. In the worst case scenario, a creditor could wait as long as twenty-four months before receiving distribution in allowed secured claims. Creditor's attempted to address this issue by arguing that adequate protection should apply both pre and post-confirmation in a chapter 13 case. This argument was not well received as adequate protection in most instances is afforded to a creditor pre-confirmation to ensure that its collateral position is not diminished pending confirmation of a chapter 11 or chapter 13 cases. **To solve this issue, §1325(a)(5)(B) has been amended to provided that adequate protection applies BOTH pre- and post-confirmation in Chapter 13 cases. Periodic payments are required in equal monthly installments and must be sufficient to provide**

**adequate protection to secured creditors commence as soon as practicable after confirmation.** The American Bankruptcy Journal: Article on Selected Creditors Issues under the BAPCP 2005, summer of 2005; by Ricardo I. Kilpatrick & Maria A. Zain, with resulting contributions made by Honorable James D. Gregg, Carrie A. Foster, judicial law clerk to Hon. James D. Gregg, Marla A. Zain, Esq., and John Wright, Esq. * Ricardo I. Kilpatrick, President, P.C. Harvard University (B.A., Economics, 1973)

10- A detailed view of the "new" additions under BAPCA 2005 applicable to secured liens on personal security interests to be paid through the chapter 13 plan calls for an organized analyses of the landmark of cases developed to address the issues in question -

**A. On Pre-Adequate Protection.**

11- Historically, adequate protection in the form of cash payments was just one of the ways that a secured creditor could be protected from the depreciation of its collateral could be protected from the depreciation of its collateral after the filing of the petition and before the confirmation or dismissal of a chapter 13 case. With the BAPCPA amendments to §1326, Congress has required that adequate protection be in the form of cash payments. In re Denton, 370 BR 441 (Bkcy. S.D. Ga. 2007)

12- The new provision under BAPCPA 2005 requires chapter 13 debtors to commence payments under plan within 30 days of the filing of the petition, but allows the debtor to reduce the payments to the trustee by the amounts the debtor pays directly to lessors of personal property or purchase money secured creditors. The "new" section 1326 (a) (1) provides:

> §1326(a)(1) Unless the Court order otherwise, the debtor(s) shall commence making payments not later than 30 days after the date of the filing of the plan or the order of relief, whichever is earlier, in the amount —

(A)   ....,

(B)   ....,

(C)   That provides adequate protection directly to a
      creditor holding an allowed claim secured by personal
      property to the extend the claim is attributable to
      the purchase of such property by the debtor for that
      portion of the obligation that becomes due after the
      order for relief, deducting the payments under sub-
      paragraph (A) by the amount so paid and providing the
      trustee with evidence of such payment, including the
      amount and date of payment.

11-  Regarding Pre-Confirmation Adequate Protection, the
Court in, In re Brown, 348 BR 583 (2006) state the following:

      BAPCPA was passed with the intent of preventing certain
      perceived abuses of the bankruptcy laws. The Chapter 13
      cases where a debtor might retain and use the vehicle
      subject to a security interest for several months, until
      the case came before the court for confirmation. Under
      per-BAPCPA, if the plan was not confirmed and dismissed,
      all the administrative expenses would be returned to the
      debtor. The secured creditor would not receive any of
      the payments and would be harmed by the amount of the
      uncompensated depreciation of the creditor's collateral.
      The BAPCPA amendments to §1326(a) which require pre-
      confirmation adequate protection payments for certain
      secured creditors stop that abuse. Now, under BAPCPA,
      for certain secured creditors, the debtor must provide
      adequate protection for the period between for the
      filing and confirmation and if a plan is not confirmed
      and the case is dismissed, the creditor receives and
      keeps the adequate protection payments.

### B. On Post-Adequate Protection.

12- Before the passage of BAPCPA, the Code did not explicitly treat the question of post-confirmation adequate protection, although secured creditors at any time could request relief from the automatic stay under §362 for cause including lack of adequate protection. BAPCPA dramatically changed this landscape. Section 1325(a) (5) (iii) (II) now explicitly requires post- confirmation adequate protection and further specifies that it must be in the form of money. As a result of this "new" provision, payments to secured creditors under the plan must always at least equal the amount of depreciation of the collateral. See In re Denton, 370 BR 441 (Bkcy. S.D. Ga. 2007)

13- Lien retention in section 1325(a) (5) (B) (i) has been interpreted to require that payments through the plan must at least equal the depreciation in the value of the collateral during the repayment period. Not to be confused with adequate protection before confirmation or with the payment of the present value (interest) after confirmation, lien retention avoids constitutional problems through depreciation and used of the collateral by the debtor after confirmation. Put another away, even if the plan recites that secured holders retained liens, if the payments proposed by the plan are insufficient to stay ahead depreciation, the retained liens will erode faster than the allowed secured claim paid ahead, contrary to the intent of section 1325(a) (5) (B) (1) Lundin, Chapter 13 Bankruptcy, 3rd. Ed Vol., Section 104.2, page 104-4; See In re Denton, id

14- Prior to BAPCPA, it was not uncommon for some chapter 13 plans to provide for balloon payments. Other form of backloading involved graduated or step-up payments plans, where the payments start up smaller and increased over the time. Secured creditors, particularly those secured by vehicle, viewed this unfair, exposing them to undue risk in light of the constant depreciation

of their collateral. …In response to those creditor concerns, Congress enacted the equal payments provision and a companion version extending the concept of adequate protection, formerly a preconfirmation requirement to post confirmation plan payments. 11 USC §1325 (a) (5) (B) (iii) (II) <u>In re Erwin</u>, 376 BR 897 (Bankr C.D. Ill 2007)

### C. Equal Monthly Payments.

15- The Code provisions providing for the requirement for equal monthly payments states:

> (a) Except as provided under subsection (b), the court *shall confirm* a plan *if* –
>
> ….
>
>> (5) With respect to each allowed secured claim *provided for by the plan* –
>> (A) The holder of such claim has accepted the plan;
>> (B) (iii) *if* –
>>
>>> (I) property to be distributed pursuant to this subsection <u>is in the form of periodic payments, such payments **shall be in equal monthly payments**</u>; and
>>> (II) The **holder of the claim is secured by a personal property**, the amount of **such payments *shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan***.

16- In interpreting a statute, "courts must presume that a legislature says in a statute what it means and means in a statute what it says". <u>In re Butler</u>, 403 BR 5 (Bkcy. W.D.Ark. 2009) *quoting* <u>Connecticut Nat'l Bank vs. Germain</u>, 503 US 249 (1992) Thus, when read together §1325(a)(5)(B)(iii)(I) and (II) merely requires the debtor to propose a plan that provides for payments to secured creditors to be maid monthly in equal amounts. Further, if the creditor's claim is secured by a personal property, the proposed payments to the creditor cannot be less than the amount required to be provide adequate protection to the creditor. The purpose of

the second part of this provision is to make sure that creditors whose claims are secured by personal property remain adequately protected during the period of the plan or until the creditors claim is paid in full. In re Butler, 403 BR 5 (Bkcy. 2009)

17- Although, Courts may agree about the general purpose behind §1325 (a)(5)(iii)(I) and (II), the concept of periodic payments in relation to equal monthly payments has resulted, basically, in to line of cases which this Honorable Court may look into for an overall view of this issues-

- The first line of cases, find that the concept "periodic payments ... in equal amounts" refer to ALL payments made on allowed secured claims after confirmation; and that does payments must begin with the trustee's first distribution under confirmed plan; and that does payments must begin with the trustee's first distribution under the confirmed plan. See In re Denton, 370 BR 441, at 446 (Bkctcy. S. D. Ga. 2007); In re Espinosa, 2008 WL 2954282 (2008); In re Williams 385 BR 468 (2008); In re Sánchez, 384 BR at 578 (2008) According to these Courts, the periodic payments contemplated under the code refer to all "regularly recurring post-confirmation payments on an allowed secured claim". Because the code states that the periodic payments shall be in equal monthly amounts, they conclude that all periodic payments after confirmation must be in equal monthly amounts.

- The second line of cases, find that equal monthly payments provision requires payments to be equal ONCE THEY BEGIN and to continue to be equal until the claim is paid in full. But, that is so, as their analysis concludes than after the amendment of BAPCA 2005, 11 USC §1326 (a)(1)(C) one of the "new" requirements under chapter 13 is the

specific requirement that a debtor pay a secured creditor adequate protection post confirmation beginning not later than 30 days after the order of relief. In other words, adequate protection is required before and after confirmation of debtor's plan. See In re Hill, 397 BR 259 (2007); In re De Sardi, 340 BR 790 (2006); In re Butler, 403 BR 5 (2009); In re Banderas, 328 BR 707 (2005); In re Pappas & Rose, 229 BR 815 (1998)

- These courts recognized that while administrative fees cannot be deferred they do not need not be paid in full prior to the distribution to creditors under the plan. In re Banderas, 328 BR 707 (2005); In re Pappas & Rose, 229 BR 815 (1998) One court, even, has found that the payments after confirmation are in the nature of an administrative expense under §503 (b) (1) finding that actual, necessary costs and expenses of preserving the estate under §503 (b) (1) includes adequate protection payments.

18- To arrive to this conclusion, the Court, in the second line of cases, analyzed that: - the basis for post- adequate protection payments under §1326 (a) (1) (C) under a chapter 13 case is that the debtor has the responsibility of making plan payments for the benefit of ALL creditors. In order, to meet this obligation, the debtor usually must use the estate automobile for the purpose of transportation to and from work. Likewise, vehicles are used to for most families to buy basic necessities such as food and clothing. Actual use of the vehicle provides a direct benefit to the estate the form of continued payments when the car is use to facilitate work. … In contrast, the actual use of the vehicle provides a direct detriment to the creditor with an interest in the vehicle. Actual use of a vehicle causes depreciation. This depreciation in the actual value of the collateral hurts a creditor's interest, if the creditor is relying

on the collateral to secure its claim. See In re De Sardi, 340 BR 790 (2006), quoting this principle as having been articulated by the Supreme Court in, In re Timbers, 484 US 365 (1988). The De Sardi court then ruled …If attorney fees are paid ahead of the adequate protection payments, then adequate protection fails; the funds that provide the adequate protection would be paid to someone besides the protected lender. In re De Sardi, 340 BR at 801 (2006) arrived to this conclusion; in summary, the holder of a lien in an automobile has a protectable interest; prior to- and after confirmation.

### D. Priority Claims: attorney fees, trustee's administrative expenses & Post- Adequate Protection Payments.

19- Upon confirmation the code requires the trustee to pay unpaid claims for administrative expenses allowed under §507(a)(2), which refers to §503(b), and trustee's percentage fee. 11 USC §1326(b) Section 503 (b) includes compensation awarded under §330(a) which includes allowed attorney fees in a chapter 13 case. The "new" provisions under §1326(b) requires: These payments must be either before or at the same time as payments to creditors under the plan…Presumptly, for these courts, the use of the word "or" in the phrase "before or at the time of each payment to creditors under the plan" does not allow flexibility in the payment of administrative claims at confirmation. Rather, it is to allow the payment of administrative claims that arise after confirmation and ongoing trustee percentage fees concurrent with the ongoing distribution to creditors. In re Butler, 403 BR 5 (Bkcy W D Ark 2009) quoting cases prior to this amendment, and In re De Sardi, 340 BR at 808; See as well, In re Williams, 385 BR 468 (Bkcy S. D. Ga. 2008) (ruling that chapter 13 debtor's attorney that received some or all their fees through plan must construct plan so that the distribution to attorney do not threaten the availability of funds to make required equal installment payments to lienholders

in amount sufficient to provide adequate protection after confirmation. 11 USC §1325(a)(5)(iii)(I, II)

20- Other courts find that the statute permits a court the option of "ordering complete payments of allowed administrative expense claims in front of other creditors, or ordering their payments at the time of payment to other creditors" In re Banderas 328 BR 707, 717 (Bankr W D Tex. 2005) and In re Pappas & Rose, P C 229 BR 815, 820 (W D Okla. 1998) These Courts recognized that while administrative fees cannot be deferred, they do not have to be paid in full prior to the distributions under the plan…The requirement to pay administrative fees-either in full before or concurrent with payments to creditors- when read in conjunction with the requirements to make adequate protection payments within 30 days of filing, dictate that equal monthly payments may not necessary occur until sometime after confirmation…In the meantime, payment for the depreciation for the creditor's property is provided by adequate protection payments that *are required by the code*. Therefore, courts who have found that equal monthly payments may not necessary occur until sometime after confirmation, they do so….arriving to the finding that adequate protection payments continue until the trustee is able to make the proposed plan payments. Accordingly, the priority of adequate protection payments in relation to administrative expenses has been addressed: - one, court has found that the payment of adequate protection payments after confirmation is in the nature of an administrative expense under §503(b)(1). In re De Sardi, 340 BR at 799 (finding that actual, necessary costs and expenses of preserving the estate under §503(b)(1) includes adequate protection payments.) The De Sardi court conclude that if adequate protection payments are necessary costs of preserving the estate under §503(b), and §507(a)(2) refers to "administrative expenses allowed under section 503(b)", then the §503(b)(1) administrative

claims would have priority over the §503(b) (2) administrative claim, which includes the attorney fees. In that instance, the adequate protection payment would be paid prior to the remaining administrative fees.  *In re Dispirito*, 371 BR 693 (Bkcy D.N.J. 2007) (ruling that adequate protection payments have priority over payments awarded to debtors counselor)

21.  Furthermore, in cases where attorney proposes thinly funded plans the Bankruptcy Court ruled since 1986 in, *In re Lanigan*, 101 BR 530, 533 (Bankr. N. D. II 1986):

> "There is no reason that has been addressed to this Court to show why the attorneys who present thinly funded plans should not share the risk of possible failure thereof and thereby be encouraged to scrutinize all plans even more closely. When plan payments are small and payment of fees out of front will delay payments to creditors for many months, the sharing of risk and encouragement of more scrutiny will be served by spreading out payments of attorney's fees over time, at least over the early months of the plans while debtor  and creditors also get some benefit from monthly payments that apply partly to debts."

**E. Amount and/or Percentage of Adequate Protection to be paid under the Plan.**

21-  The new additions under the Code requires the chapter 13 plans ***must provide*** *to* ***secured claims personal security agreements intended to be paid through the chapter 13 trustee*** **equal monthly periodic payments** that **equal at least an amount sufficient to provide secure creditor with adequate protection**. Hon. William Houston Brown and Lawrence R. Ahern III, on 2005 Bankruptcy Reform Legislation Analysis

22-  Now, even after the enactment of BAPCA, under §1325 (a) (1) a plan must still comply with the provisions of chapter 13 on order to be confirmed. As stated, one of the "new" requirements under chapter 13 under §1326 (a) (1) is the specific requirement

that a debtor pay to a secured creditor adequate protection beginning not later than 30 days after the order of relief. In other words, adequate protection is required before *and* after confirmation of the debtor's plan.

23- To that effect, title 11 USC §361 provides that when adequate protection is required under sections 362, 363, or 364 of this Title of an interest of an entity in property, such adequate protection may be provided by – (1) *requiring the Trustee to make a cash payment or periodic cash payments to such entity*, (2) by providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property, and (3) by granting such other relief.

24- Pertain to the applicable percentage and/or amount of adequate protection to be applied it has been ruled that …Actual use of the vehicle provides a direct benefit to the estate the form of continued payments when the car is use to facilitate work. … In contrast, the actual use of the vehicle provides a direct detriment to the creditor with an interest in the vehicle. Actual use of a vehicle causes depreciation. *This depreciation in the actual value of the collateral* hurts a creditor's interest, if the creditor is relying on the collateral to secure its claim. See In re De Sardi, 340 BR 790 (2006), quoting this principle as having been articulated by the Supreme Court in, In re Timbers, 484 US 365 (1988). In summary, the holder of a lien in an automobile has a protectable interest; prior to- and after confirmation equivalent to the depreciation in the actual value of its collateral.

25- Even prior to BAPCPA 2005 courts already ruled that… Adequate protection by contrast affords the holder of a secured creditor compensation for any diminution in the value of the

collateral *pending* confirmation of the plan. <u>In re Cook</u>, 205 BR 437 (Bankr N. D. Fla. 1997)

26- The case at caption was filed in the Bankruptcy Court for the District of Puerto Rico. Therefore, for an automobile located in the Commonwealth of Puerto Rico the applicable percentage of depreciation will be the one designated by the Government of Puerto Rico which is that of 1.66% monthly. See <u>In re Erwin</u>, 376 BR 897 (Bankr C. D. Ill. 2007) quoting the De Sardi court, 340 BR 790, 809-10 (Bankr S.D. Tex. 2006) as per a 1.50% applicable for depreciation to autos located in Texas.

27- Likewise, the payments required under new Section 1326(a) (1) *are not conditioned that the lessor or creditor will first make a request or file a motion.* It is clear that unless the court orders otherwise, the payments under §1326 (a) (1) must commence directly to the lessor or creditor within 30 days of the petition. See, Lundin, Keith M. <u>Chapter 13 Bankruptcy</u>, 3rd Ed. §426.1 (2000 & Supp. 2007-1)

F. **Evidence of Payments and Insurance Policy.**

28. New section 1326 (a) (1) (C) of the Code requires a chapter 13 debtor to make adequate protection payments directly to a creditor holding an allowed claim secured by a personal property to the extend it is "attributable to the purchase of such property by the debtor for the portion of the obligation that becomes due after the order for relief". These payments are to commence within thirty days after the filing of the plan or the order of relief whichever is earlier. Payments Plan payments are to be reduce by the amount of adequate protection payments and the trustee is to be provided evidence of payments made, including the amounts and dates of the payments. These new requirements promise bookkeeping headaches... *Supra*

### G.    Burden of Proof.

29-  It is the debtor's burden to proof that something more or different is going to happen after confirmation that will enable them *to fund* and/or comply with the schedule of payments as proposed.

## IV. PLEA.

30-  Movant does not accept the plan as proposed.

31-  Movant standing is ascertained as it filed on April 23, 2018, a secure Lien claim holder on a personal security agreement with the outstanding debt of $7,423.02, under account no. 1664. See, Clm. Reg. 1.

32-  Amended plan dated June 7, 2018provides for the payment to Movants secure lien claim "through the plan". This automatically triggers the application of §§1325 (a) (5) (iii) (I) and (II) and §1326(a) (1) and §1326(b). The proposed plan provides for a pre-adequate protection of $$75 dollars. Yet, post- petition will start in one year and one month (1 yr. & 1 mth.). Furthermore, the plan as proposed is insufficiently funded for $492.96 dollars. See, Bkcy Dck 11 and Attachment A and B.

34-  It is Movant's contention that in a chapter 13 case the debtor has the responsibility of making plan payments for the benefit of all creditors. In order, to meet this obligation, the debtor usually must use the estate automobile for the purpose of transportation to and from work. Likewise, vehicles are used to by most families to buy basic necessities such as food and clothing. Actual use of the vehicle provides a direct benefit to the estate in the form of continued payments when the car is use to facilitate work. In contrast the actual use of the vehicle produces a direct detriment to the creditor with an interest in the vehicle. Actual use of the vehicle causes depreciation. This depreciation in actual value of the collateral hurts a creditor interest, if the creditor is relying on the collateral to secure its claim. See In re De

*Sardi*, 340 BR 790 (2006)., quoting this principle as having been articulated by the Supreme Court in, *In re Timbers*, 484 US 365 (1988)

35- Bankruptcy Court ruled since 1986 in, *In re Lanigan*, 101 BR 530, 533 (Bankr. N. D. II 1986):

"There is no reason that has been addressed to this Court to show why the attorneys who present thinly funded plans should not share the risk of possible failure thereof and thereby be encouraged to scrutinize all plans even more closely. When plan payments are small and payment of fees out of front will delay payments to creditors for many months, the sharing of risk and encouragement of more scrutiny will be served by spreading out payments of attorney's fees over time, at least over the early months of the plans while debtor and creditors also get some benefit from monthly payments that apply partly to debts."

36- Movant does not waive any other right under BAPCPA 2005.


**WHEREFORE,** FIRSTBANK Puerto Rico is respectfully requested from this Honorable Court grant:

1. Movant requests concurrent equal monthly payments with attorney fees in the amount of **$50.00 dollars**, immediately after confirmation. 11 USC §1325 (a) (5) (A) and (B) (I), 11 USC § §1326 (b); In re Butler 403 BR 5 (2009); In re De Sardi, 340 BR 808 (2008); In re Williams, 385 BR 468 (2008), and In re Lanigan, 101 BR 530 (1986), in that line all parties will share the risk. See, Bkcy Dck 11 and Attachment A and B.


### RESPONSE TIME NOTICE

Within fourteen (14) days after service as evidenced by the certification, and additional three (3) days pursuant to Fed. R. Bankr. P. 9006 (f) if you were served by mail, any party against whom this paper has been served, or any party to the action who

Case no. 18-01896 [ESL]
FIRSTBANK Puerto Rico
Page 19 of 19

19

objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's Office Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

Rule 9013-1 (h)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that on this the same day of the filing of this motion the a copy of this Motion its being sent by first class mail to the debtor(s) JOSE O GOMEZ APONTE, at the address on the docket, 4828 ROOSEVELT BOULEVRD, PHILADELPHIA, PA 19124; by the Bankruptcy CM/ECF System to the authorized address: - to the Debtor(s) counselor ROBERTO FIGUEROA CARRASQUILLO, - Atty. Alejandro Oliveras Rivera, the Chapter 13 - US Trustee, - Atty. José Carrión Morales, the Chapter 13 - US Trustee and to all the creditor's in the List of Creditors

In San Juan, Puerto Rico, on the 11th of June, 2018.

BY:  /s/ María M. Benabe Rivera
     María M. Benabe Rivera
     Attorney for Movant - US - DC 208906
     Maricarmen Colón Díaz - US - DC 211410
     FIRSTBANK Puerto Rico
     Centro de Servicios al Consumidor - Código 248
     1130 Muñoz Rivera Ave., Rio Piedras, P R
     PO Box 9146, San Juan, PR 00908-0146
     maria.benabe@firstbankpr.com
     (787)729-8135 / (787)729-8276

[Rev. 6/2016]

| AÑO | MESES | INFULL | SEGURO | PRIORITY | HON | HON |
|---|---|---|---|---|---|---|
| | | FB | FB | ASUME | SINDICO | ABOGADO |
| | | CLAIM 1 | | NO CLAIM | | |
| | 2018 ENE | | | | | |
| | FEB | | | | | |
| | MAR | | | | | |
| PLAN | ABR | | | | | |
| 1 | MAY | $75.00 | $38.00 | | $15.00 | |
| 2 | JUN | $75.00 | $38.00 | | $15.00 | $44.00 |
| 3 | JUL | $5º | $38.00 | | $15.00 | $97.00 |
| 4 | AGO | | $38.00 | | $15.00 | $97.00 |
| 5 | SEP | | $38.00 | | $15.00 | $97.00 |
| 6 | OCT | | $38.00 | | $15.00 | $97.00 |
| 7 | NOV | | $38.00 | | $15.00 | $97.00 |
| 8 | DIC | | $38.00 | | $15.00 | $97.00 |
| 9 | 2019 ENE | | $38.00 | | $15.00 | $97.00 |
| 10 | FEB | | $38.00 | | $15.00 | $97.00 |
| 11 | MAR | | $38.00 | | $15.00 | $97.00 |
| 12 | ABR | | $38.00 | | $15.00 | $97.00 |
| 13 | MAY | | $38.00 | | $62.00 | $515.50 |
| 14 | JUN | | $38.00 | | $62.00 | $515.50 |
| 15 | JUL | | $38.00 | | $62.00 | $515.50 |
| 16 | AGO | $208.00 | $38.00 | | $62.00 | $307.50 |
| 17 | SEP | $515.50 | $38.00 | | $62.00 | |
| 18 | OCT | $515.50 | $38.00 | | $62.00 | |
| 19 | NOV | $515.50 | $38.00 | | $62.00 | |
| 20 | DIC | $515.50 | $38.00 | | $62.00 | |
| 21 | 2020 ENE | $515.50 | $38.00 | | $62.00 | |
| 22 | FEB | $515.50 | $38.00 | | $62.00 | |
| 23 | MAR | $515.50 | $38.00 | | $62.00 | |
| 24 | ABR | $515.50 | $38.00 | | $62.00 | |
| 25 | MAY | $515.50 | $38.00 | | $62.00 | |
| 26 | JUN | $515.50 | $38.00 | | $62.00 | |
| 27 | JUL | $515.50 | $38.00 | | $62.00 | |
| 28 | AGO | $515.50 | $38.00 | | $62.00 | |
| 29 | SEP | $515.50 | $38.00 | | $62.00 | |
| 30 | OCT | $363.52 | $38.00 | $151.98 | $62.00 | |
| 31 | NOV | | | $553.50 | $62.00 | |
| 32 | DIC | | | $553.50 | $62.00 | |
| 33 | 2021 ENE | | | $553.50 | $62.00 | |
| 34 | FEB | | | $553.50 | $62.00 | |
| 35 | MAR | | | $553.50 | $62.00 | |
| 36 | ABR | | | $553.50 | $62.00 | |
| 37 | MAY | | | $553.50 | $62.00 | |
| 38 | JUN | | | $553.50 | $62.00 | |
| 39 | JUL | | | $553.50 | $62.00 | |
| 40 | AGO | | | $553.50 | $62.00 | |
| 41 | SEP | | | $553.50 | $62.00 | |
| 42 | OCT | | | $553.50 | $62.00 | |
| 43 | NOV | | | $553.50 | $62.00 | |
| 44 | DIC | | | $553.50 | $62.00 | |
| 45 | 2022 ENE | | | $553.50 | $62.00 | |
| 46 | FEB | | | $553.50 | $62.00 | |
| 47 | MAR | | | $553.50 | $62.00 | |
| 48 | ABR | | | $553.50 | $62.00 | |
| 49 | MAY | | | $553.50 | $62.00 | |
| 50 | JUN | | | $553.50 | $62.00 | |
| 51 | JUL | | | $326.13 | $62.00 | |
| 52 | AGO | | | | $62.00 | |
| 53 | SEP | | | | $62.00 | |
| 54 | OCT | | | | $62.00 | |
| 55 | NOV | | | | $62.00 | |
| 56 | DIC | | | | $62.00 | |
| 57 | 2023 ENE | | | | $62.00 | |
| 58 | FEB | | | | $62.00 | |
| 59 | MAR | | | | $62.00 | |
| 60 | ABR | | | | $62.00 | |
| | | $7,423.02 | $1,140.00 | $11,548.11 | $3,094.00 | $2,868.00 |


Attachment A

11-JUNIO-18

A :        LCDA. BENABE
            LCDA. COLON

DE :       IVELISSE ROMERO ABRAHANTE

ASUNTO:    18-01896  ESL
              JOSE O GOMEZ APONTE


**CONF. HEARING: 15-JUNIO-18**

RE:       **INSUFFICIENTLY FUNDED
           TíTULO 11 USC  1325 (b)**


PLAN ENMENDADO: 7-JUNIO-2018    BASE PROPUESTA:    **$31,320.00**

| | | | | |
|---|---|---|---|---|
| INFULL | FB | | $7,423.02 | CLAIM 1 |
| SEGURO | UNIVERSAL-FIRSTBANK | $ | 1,976.00 | |
| ARREARS | | $ | - | |
| ARREARS | | $ | - | |
| SECURED | | $ | - | |
| PRIORITY | IRS | | $4,816.53 | CLAIM 2 |
| PRIORITY | ASUME | | $11,548.11 | NO CLAIM |
| ATTY. FEE: | | $ | 2,868.00 | RADICADO |
| Val. Collateral | | $ | - | |
| | | | | |
| **SUB-TOTAL** | | $ | 28,631.66 | |
| TRUSTEE FEE | | $ | 3,181.30 | |
| | | | | |
| **PLAN NECESITA ESTA BASE:** | | $ | **31,812.96** | |
| | | $ | - | |

                  **SE QUEDA CORTO POR:**      **$492.96**


**SE ANEJA MINUTA; DOCKET CLAIMS; DOCKET REGISTER.**

*Attachment B*

Label Matrix for local noticing
0104-3
Case 18-01896-ESL13
District of Puerto Rico
Old San Juan
Wed May 30 09:50:34 AST 2018

US Bankruptcy Court District of P.R.
Jose V Toledo Fed Bldg & US Courthouse
300 Recinto Sur Street, Room 109
San Juan, PR 00901-1964

ASUME
PO Box 11218
San Juan, PR  00910-2318

Att Services
PO Box 192830
San Juan, PR  00919-2830

DTOP
PO Box 41269 Minillas Station
San Juan, PR  00940-1269

EASTERN AMERICA INSURANCE COMPANY
PO BOX 9023862
SAN JUAN, PR  00902-3862

Empresas Berrios
PO Box 674
Cidra, PR  00739-0674

FIRST BANK
CONSUMER SERVICE CENTER
BANKRUPTCY DIVISION -CODE 248
PO BOX 9146, SAN JUAN PR 00908-0146

First Premier Bank
601 S Minnesota Ave
Sioux Falls, SD 57104-4868

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

MID AMERICAN BANK & TRUST
TOTAL CARD INC
5109 S BROADBAND LANE
Sioux Falls SD  57108-2208

(p)T MOBILE
C O AMERICAN INFOSOURCE LP
4515 N SANTA FE AVE
OKLAHOMA CITY OK 73118-7901

Zahira Liz Ortiz Ramos
Urb. Diplo M37
Naguabo, PR  00718

JOSE ORLANDO GOMEZ APONTE
4828 ROOSEVELT BOULEVARD
PHILADELPHIA, PA 19124-2430

JOSE RAMON CARRION MORALES
PO BOX 9023884
SAN JUAN, PR 00902-3884

MONSITA LECAROZ ARRIBAS
OFFICE OF THE US TRUSTEE (UST)
OCHOA BUILDING
500 TANCA STREET  SUITE 301
SAN JUAN, PR 00901

ROBERTO FIGUEROA CARRASQUILLO
PO BOX 186
CAGUAS, PR 00726-0186

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Internal Revenue Service
PO Box 21126
Philadelphia, PA  19114-0326

T-Mobile
12920 SE 38th St
Bellevue, WA  98006-1350

End of Label Matrix
Mailable recipients     16
Bypassed recipients      0
Total                   16